J-S27001-16 & J-S27002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: H.A.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.P.C., FATHER | No. 1933 MDA 2015 |

Appeal from the Order entered October 6, 2015,
in the Court of Common Pleas of York County, Juvenile
Division, at No(s): CP-67-DP-0000174-2014

| | |
|---|---|
| IN RE: ADOPTION OF: H.A.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.P.C. | No. 1939 MDA 2015 |

Appeal from the Decree entered October 6, 2015,
in the Court of Common Pleas of York County, Orphans' Court
Division, at No(s): 2015-0067

BEFORE:  SHOGAN and DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 10, 2016**

M.P.C. ("Father") appeals from the decree entered on October 6, 2015, that granted the petition filed by the York County Office of Children, Youth and Families Service ("CYF" or the "Agency") seeking to terminate his parental rights to his child, H.A.C. ("Child"), born in January of 2014, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).[1] Father also appeals the order entered on October 6, 2015, changing the

---

[*]  Former Justice specially assigned to the Superior Court.

[1]  In the same decree entered on October 6, 2015, the trial court also terminated the parental rights of Child's mother, S.M.C. ("Mother").  Mother has not filed an appeal, nor is she a party herein.

permanency goal from reunification to adoption, with a concurrent goal of placement with a legal custodian, pursuant to the Juvenile Act, 42 Pa.C.S. § 6351. We affirm.

In its opinion entered on October 6, 2015, the trial court set forth the following factual background and procedural history, which we incorporate herein. Central to this appeal, the trial court found that Child had extensive special needs requiring her participation in weekly therapy with a feeding specialist and an occupational therapist. On August 14, 2014, the trial court granted CYF's Application for Emergency Protective Custody authorizing an investigation of Child's surroundings and to take Child into custody if she was in imminent danger. Legal and physical custody of Child was awarded to CYF and Child was placed in foster care. In an August 18, 2014 Shelter Care Order, sufficient evidence was presented to the trial court that Child's return to Father was not in Child's best interests. CYF retained physical and legal custody, and Child's placement in a foster home was continued. On September 2, 2014, Child was adjudicated dependent. Legal and physical custody was awarded to CYF for placement in kinship care; however, the goal, at that time, was reunification with a parent or guardian. A Family Service Plan was prepared on April 17, 2014, and was revised on September 2, 2014, January 22, 2015, and July 2, 2015. In a Permanency Review Order dated January 22, 2015, the trial court found that there had been minimal compliance with the Permanency Plan by Father and that Father

made minimal progress in alleviating the circumstances that necessitated Child's original placement. In a July 2, 2015 Permanency Review Order, the trial court made identical findings concerning Father's nominal compliance and progress. Trial Court Adjudication, 10/6/15, at 1–5.

On May 18, 2015, CYF filed a petition for involuntary termination of Father's parental rights and for a change of permanency goal. The trial court held evidentiary hearings on August 21, 2015, and September 4, 2015. At the August 21, 2015 hearing, CYF presented the testimonies of Lisa Blake, a service coordinator with Early Intervention; Elaine Walton, a licensed practical nurse and a certified instructor for infant massage; Amy Goodman, a special instructor for Pediatrics Incorporated; and Bethany Davis, a caseworker for CYF. N.T., 8/21/15, at 8, 26, 48, and 79. At the hearing on September 4, 2015, the guardian *ad litem*, counsel for Father, and counsel for Mother, conducted cross–examination of Ms. Davis. N.T., 9/4/15, at 5–20.

Upon evaluation of the testimony presented, the trial court entered a decree on October 6, 2015, terminating the parental rights of Father pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), and (b). In an order entered that same date, the trial court changed Child's permanency goal from reunification to adoption, with a concurrent goal of placement with a legal custodian.

On November 4, 2015, Father filed notices of appeal, along with concise statements of errors complained of on appeal in compliance with Pa.R.A.P. 1925(a)(2)(i) and (b). On November 19, 2015, this Court entered orders listing the appeals consecutively.

Father raises two issues on appeal:

I. Whether the [trial] court abused its discretion in terminating parental rights of [Father] against the sufficiency and weight of the evidence[?]

II. Whether the [trial] court abused its discretion in ordering a change of goal to adoption against the sufficiency and weight of the evidence by finding that the minor child's best interests would be served by terminating Father's parental rights although Father has maintained a bond with her [sic] child and finding Father had been given a reasonable amount of time to achieve permanency[?]

Father's Brief at 7 (full capitalization omitted).

In his first issue, Father argues that the trial court abused its discretion in terminating his parental rights, against the sufficiency and weight of the evidence, because he has made progress consistent with the July 2, 2015 Family Service Plan. In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been

- 4 -

often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel*-*Bassett v. Kia Motors America, Inc.*, [613 Pa. 371, 455,] 34 A.3d 1, 51 ([Pa.] 2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 [(Pa.] 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J. & G.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court terminated Father's parental rights under section 2511(a)(1), (2), (5), and (b). Trial Court Adjudication, 10/6/15, at 8–13. This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In the Matter of B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will focus on the trial court's decision to terminate under subsections 2511(a)(2) and (b).

23 Pa.C.S. §§ 2511(a)(2) and (b) provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

- 6 -

23 Pa.C.S. §§ 2511(a)(2) and (b).

Our Supreme Court sets forth an inquiry under section 2511(a)(2) as follows:

> [Section] 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." If and only if grounds for termination are established under subsection (a), does a court consider "the developmental, physical and emotional needs and welfare of the child" under § 2511(b).
>
> [The Supreme Court] has addressed incapacity sufficient for termination under § 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986), (quoting *In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (Pa. 1978)).

*In re Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In the Interest of A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness

- 7 -

regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

We adopt the trial court's reasoning to terminate Father's parental rights under 23 Pa.C.S. § 2511(a)(2). Trial Court Adjudication, 10/6/15, at 11. The trial court concluded its analysis of subsection 2511(a)(2), as follows:

> The Court finds that the conditions which led the child to placement outside the care and custody of . . . Father continue to exist. The child has been in placement for approximately twelve (12) months which is most of the minor child's life. Minor child is well-bonded to the foster family. Testimony revealed that . . . Father [has] failed to alleviate the conditions which led to the child's placement. Father still struggle[s] with feeding the minor child to ensure that her nutritional needs are being met. Father [is] unable to adopt and implement parenting skills which will allow [him] to develop a close bond with the minor child. Father [has] failed to obtain stable employment and [is] unable to financially provide for [himself] or the minor child.

Trial Court Adjudication, 10/6/15, at 11.

The competent, clear, and convincing evidence in the record supports the trial court's determination that Father has not demonstrated an ability to remedy the circumstances which led to Child's placement, nor is there any indication that he could remedy such circumstances in the foreseeable future. After a careful review of the record, we find that the trial court aptly discussed the evidence requirements of section 2511(a)(2). We will not impose our own credibility determinations and reweigh the evidence. We must defer to the trial judge's determination, as the factual findings are supported by the record, and the court's legal conclusions are not the result

of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826–827. It was reasonable for the trial court to conclude Father was incapable of parenting Child, that Child had been left without proper parental care and control, and that Father cannot, or will not, remedy his parental incapacity. 23 Pa.C.S. § 2511(a)(2); *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Next, we consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). It is also appropriate to consider a child's bond with a foster parent. *In re: T.S.M.*, 71 A.3d at 268.

"A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d at 1121. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125 (citation omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

The trial court's rationale for terminating Father's parental rights under section 2511(b) was as follows:

> The Court has thoroughly evaluated the minor child's relationships in this matter. The Court finds that the child has an acquaintance bond with . . . Father. At this point, the Court believes that the minor child will not be negatively impacted by the termination of . . . Father's parental rights. The Court also finds that the bond between the minor child and the foster parents is strong and healthy. Testimony established that the child is happy and feels comfortable in their care. Minor child spontaneously reaches out to the foster parents who provide her daily needs and act as the child's parental figures. The bond that the minor child has with the foster family can provide safety, security and permanency for the child. Termination of

- 10 -

parental rights will best meet the needs of the child and permit the child to achieve the stability that she deserves.

Trial Court Adjudication, 10/6/15, at 12. We agree.

While Father contends that termination of his parental rights is not in Child's best interests because his bond with Child has grown stronger since her original placement, our Supreme Court has explained, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *In re T.S.M.*, 71 A.3d at 267. The Court also observed that "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 268. Moreover, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.* at 269.

The trial court herein conducted a sufficient analysis of the child's needs and welfare under section 2511(b). The competent record evidence supports the trial court's determination that the termination of Father's parental rights to Child is in her best interest, and that Child would not suffer any harm from the termination of Father's parental rights. Additionally, the trial court's legal conclusions "are not the result of error of law or abuse of

- 11 -

discretion." *See In re Adoption of S.P.*, 47 A.3d at 826–827. Thus, we will not disturb the trial court's decision.

In his second issue, Father argues that the trial court abused its discretion in ordering a change of goal from reunification to adoption, against the sufficiency and weight of the evidence. Father asserts that he has maintained a bond with Child, and he had not been given a reasonable amount of time to achieve permanency. Father's Brief at 11.

We have described our standard and scope of review in dependency cases as follows:

> [W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination as opposed to the findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In re D.P.*, 972 A.2d 1221, 1225 (Pa. Super. 2009) (quoting *In re C.M.,* 882 A.2d 507, 513 (Pa. Super. 2005)). In considering a goal change, "the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights are secondary." *Id.* at 1227 (citing *In re A.K.,* 936 A.2d 528, 532–533 (Pa. Super. 2007)).

The trial court explained why a goal change to adoption was in Child's

best interests, as follows:

> In the present case, the Agency has proven by clear and convincing evidence that it is in the minor child's best interest to change the goal to placement for adoption. The minor child has been in placement for approximately twelve (12) months. Although the Court believes . . . Father love[s] minor child, [he has] made minimal progress in [his] ability to provide for minor child's most basic needs. Father [has] been working with a feeding team for approximately one (1) year. Elaine Walton, an LPN with Early Intervention, testified that she has been working with [Father] since September 4, 2015 on feeding minor child. After approximately one (1) year of service, Ms. Walton testified that . . . Father still require[s] supervision when feeding minor child. Ms. Walton testified that she worries that without supervision the minor child will choke or become malnourished due to . . . Father's inability to progress with feeding skills for minor child. Father [has] also been working with a special instructor through Early Intervention for approximately fifteen (15) months. The special instructor, Amy Goodman, testified that [Father is] not making progress. Ms. Goodman testified that she has to teach [Father] the same skills repeatedly as [he fails] to remember the skills and implement them in caring for the minor child. Ms. Goodman further testified that the child appears to have an acquaintance bond with . . . Father as she responds to [his] affection but does not spontaneously reach out to [him] as she does with foster parents. The Family Engagement Services program has been working with . . . Father since April 21, 2015. The Family Engagement Services Closing Summary dated August 12, 2015 indicates that . . . Father [has] difficulty reading minor child's cues and responding appropriately, that [he is] not consistently demonstrating an ability to feed the minor child, and that [he needs] consistent prompting throughout [his] visits. Overall, the Summary concludes that . . . Father [has] been unwilling or unable to consistently demonstrate the skills that would allow for the minor child to be safe in [his] care. Father [has not] alleviated the circumstances which led to the minor child's placement. Bethany Davis, the Agency caseworker, testified that . . . Father [is] currently residing with paternal grandmother and that there are still environmental concerns with the home. Ms. Davis further testified that . . . Father [is] unable to financially care for

[himself] and that [he relies] on paternal grandmother for support.

Overall the court finds that the minor child's best interest demands that the goal be changed from reunification with a parent to placement for adoption.

Trial Court Adjudication, 10/6/15, at 7–8.

We conclude that the trial court appropriately considered all of the factors to be assessed under sections 6301 and 6351 of the Juvenile Act, and its discussion is consistent with our Court's decisions and those decisions of our Supreme Court. *See In the Interest of JOV*, 686 A.2d 421, 422 (Pa. Super. 1996) (citing 42 Pa.C.S. § 6301(b)(1), and (3)); *see also In re R.J.T.*, 9 A.3d at 1190 (citing 42 Pa.C.S. § 6351). The trial court found that the best interests of Child, who has extensive special needs, are best served in the foster care home where her daily needs are being met and which provides her with safety, security, and permanency. Trial Court Adjudication, 10/6/15, at 12. The trial court also found that there is a pre-adoptive resource for Child. *Id.* at 5; Stipulation of Counsel, 7/23/15, ¶ 15. We discern no abuse of discretion in the trial court's decision to change the permanency goal to adoption.

We incorporate a redacted copy of the trial court's adjudication entered on October 6, 2015, and we affirm the trial court's decree and order on the basis of that opinion. The parties are instructed to attach a redacted copy of said adjudication to any future filings with this Court.

Decree and order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: _5/10/2016_

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

In the Interest of:
    H.A.C.,                      :          No. CP-67-DP-174-2014
         Minor Child         :          Change of Goal

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In Re: Adoption of            :
    H.A.C.,                      :          No. 2015-0067
         Minor Child         :          Termination of Parental Rights

## APPEARANCES:

Martin Miller, Esquire
For York County Children and Youth Services

Rachel D. Hamme, Esquire
Guardian ad Litem for Minor Child

John R. Scheidemann, Esquire
For the Mother

Christopher D. Moore, Esquire
For the Father

## ADJUDICATION

Before this Court are a Petition for Change of Goal and a Petition for Involuntary

Termination of Parental Rights filed by York County Office of Children, Youth and

Families (hereinafter, "Agency") on May 18, 2015, regarding H.A.C., whose date of birth is

January ● 2014.

An evidentiary hearing was held on August 21, 2015 and September 4, 2015

addressing testimony and evidence relating to Mother and Father. The entire Dependency

Record for minor child, H.A.C., docketed at CP-67-DP-174-2014, was incorporated into the

1

hearing record. Additionally, the Stipulation of Counsel filed July 23, 2015 was also incorporated into the hearing record for the child, along with Exhibits 1, 2, 3, 4, 5, 6, and 7 for the Agency. Based upon the testimony and evidence presented at the hearing, as well as the history of this case, the Petition for Change of Goal is GRANTED and the Petition for Involuntary Termination of Mother's and Father's Parental Rights is GRANTED as to H.A.C.

### FINDINGS OF FACT

1. H.A.C. (hereinafter, "minor child") was born on January █, 2014.

2. The natural mother of the minor child is S████ M██ C██ (hereinafter, "Mother") who currently resides at █ 2nd Avenue, Hanover, Pennsylvania 17331.

3. The Father of the minor child is M███ P██ C██ (hereinafter, "Father") whose current address is █ 2nd Avenue, Hanover, Pennsylvania 17331.

4. A Certification of Acknowledgement of Paternity was filed on May 26, 2015 which indicates there is not a claim or Acknowledgement on file for the minor child.

5. A Petition for Involuntary Termination of Parental Rights and a Petition to Change Court Ordered Goal were filed on May 18, 2015 by the Agency.

6. An Application for Emergency Protective Custody was filed by the Agency on August 14, 2014.

7. In an Order for Emergency Protective Custody dated August 13, 2014, the Agency or any authorized law enforcement officer was authorized to investigate the

2

surroundings of the minor child and to take the minor child into custody since the minor child was in imminent danger. Legal and physical custody was awarded to the Agency. The minor child was placed in foster care.

8. In a Shelter Care Order dated August 18, 2014, sufficient evidence was presented that continuation or return of the minor child to Mother and Father was not in the minor child's best interest. Legal and physical custody was awarded to the Agency and the minor child was placed in foster care.

9. An Alleged Dependent Child Petition was filed by the Agency on August 20, 2014.

10. On September 2, 2014, the minor child was adjudicated dependent. Legal and physical custody was awarded to the Agency for placement in kinship care. The goal initially established was return to a parent or guardian.

11. Family Service Plans were prepared and dated as follows:

   a. Initial Family Service Plan dated April 17, 2014.

   b. Revised Family Service Plan dated September 2, 2014.

   c. Revised Family Service Plan dated January 22, 2015.

   d. Revised Family Service Plan dated July 2, 2015.

12. In a Permanency Review Order dated January 22, 2015, the Court made certain findings and conclusions, including, but not limited to:

   a. There had been minimal compliance with the Permanency Plan by the Mother and minimal compliance with the Permanency Plan by Father.

3

b. Reasonable efforts had been made by the Agency to finalize the Permanency Plan.

c. Mother had made minimal progress towards alleviating the circumstances which necessitated the original placement and Father had made minimal progress towards alleviating the circumstances which necessitated the original placement.

d. Legal and physical custody of the minor child was confirmed with the Agency.

e. There continued to be a need for placement of the minor child outside the care and custody of the Mother and Father.

13. In a Permanency Review Order dated July 2, 2015, the Court made certain findings and conclusions including, but not limited to:

a. There had been minimal compliance with the Permanency Plan by the Mother and minimal compliance with the Permanency Plan by the Father.

b. Reasonable efforts had been made by the Agency to finalize the Permanency Plan.

c. Mother made minimal efforts progress alleviating the circumstances which necessitated the original placement and Father had made minimal progress towards alleviating the circumstances which necessitated the original placement.

4

d. Legal and physical custody of the minor was confirmed with the Agency.

e. There continued to be a need for placement of the minor child outside the care and custody of the Mother and Father.

14. The minor child has extensive special needs.

15. The minor child participates in weekly therapy with a feeding specialist and an occupational therapist.

16. A pre-adoptive resource has been identified for the minor child.

17. Proper notice of the Change of Goal/Termination Hearing scheduled for August 21, 2015, was effectuated upon Mother and Father on June 3, 2015.

## DISCUSSION

### I. Petition for Change of Goal

Before the Court can change the goal for a child in a juvenile dependency action, the Agency must prove by clear and convincing evidence that the change of goal would be in the child's best interest. In re Interest of M.B., 674 A.2d 702 (Pa. Super. 1996). In making a disposition, the Court should consider what is best suited to the protection and physical, mental, and moral welfare of the child. 42 Pa.C.S.A §6351; In re Davis, 502 Pa. 110, 121, 465 A.2d 614, 619 (1983). In rendering a disposition "best suited to the protection and physical, mental, and moral welfare of the child," the hearing court must take into account "any and all factors which bear upon the child's welfare and which can aid the court's

5

necessarily imprecise prediction about that child's future well-being." In re Davis, 502 Pa. 110, 122, 465 A.2d 614, 620 (1983).

The purpose of the Juvenile Act is to preserve family unity and to provide for the care, protection, safety and wholesome mental and physical development of the child. 42 Pa.C.S.A. 6301(a)(1)-(1.1). The Juvenile Act was not intended to place children in a more perfect home; instead, the Act gives a court the authority to "intervene to ensure that parents meet certain legislatively determined *irreducible minimum standards* in executing their parental rights." In re J.W., 578 A.2d 952, 958 (Pa. Super. 1990) (emphasis added).

When a child is placed in foster care, the parents have an affirmative duty to make the changes in their lives that would allow them to become appropriate parents. In re Diaz, 669 A.2d 372, 377 (Pa. Super. 1995). A family service plan is created to help give the parents some guidelines as to the various areas that need to be improved. In the Interest of M.B., 565 A.2d 804, 806 (Pa. Super. 1989), app. Denied, 589 A.2d 692 (Pa. 1990). By assessing the parents' compliance and success with this family service plan, the Court can determine if the parents have fulfilled their affirmative duty. In re J.S.W., 651 A.2d 167, 170 (Pa. Super. 1994).

Under Section 6351 of the Adoption Act, the Agency has the burden to show a goal change would serve the child's best interests and the "safety, permanency, and well-being of the child must take precedence over all other considerations." In re D.P., 972 A.2d 1221, 1227 (Pa. Super. 2009), appeal denied, 973 A.2d 1007 (Pa. 2009). Thus, even where the

6

parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006).

In the present case, the Agency has proven by clear and convincing evidence that it is in the minor child's best interest to change the goal to placement for adoption. The minor child has been in placement for approximately twelve (12) months. Although the Court believes Mother and Father love minor child, they have made minimal progress in their ability to provide for minor child's most basic needs. Mother and Father have been working with a feeding team for approximately one (1) year. Elaine Walton, an LPN with Early Intervention, testified that she has been working with the parents since September 4, 2015 on feeding minor child. After approximately one (1) year of service, Ms. Walton testified that Mother and Father still require supervision when feeding minor child. Ms. Walton testified that she worries that without supervision the minor child will choke or become malnourished due to Mother's and Father's inability to progress with feeding skills for minor child. Mother and Father have also been working with a special instructor through Early Intevention for approximately fifteen (15) months. The special instructor, Amy Goodman, testified that the parents are not making progress. Ms. Goodman testified that she has to teach the parents the same skills repeatedly as they fail to remember the skills and implement them in caring for the minor child. Ms. Goodman further testified that the child appears to have an acquaintance bond with Mother and Father as she responds to their

7

affection but does not spontaneously reach out to them as she does with foster parents. The Family Engagement Services program has been working with Mother and Father since April 21, 2015. The Family Engagement Services Closing Summary dated August 12, 2015 indicates that Mother and Father have difficulty reading minor child's cues and responding appropriately, that they are not consistently demonstrating an ability to feed the minor child, and that they need consistent prompting throughout their visits. Overall, the Summary concludes that Mother and Father have been unwilling or unable to consistently demonstrate the skills that would allow for the minor child to be safe in their care. Mother and Father haven't alleviated the circumstances which led to the minor child's placement. Bethany Davis, the Agency caseworker, testified that Mother and Father are currently residing with paternal grandmother and that there are still environmental concerns with the home. Ms. Davis further testified that Mother and Father are unable to financially care for themselves and that they rely on paternal grandmother for support.

Overall the court finds that the minor child's best interest demands that the goal be changed from reunification with a parent to placement for adoption.

## II. Petition for Involuntary Termination of Parental Rights

The Agency argues that Mother's and Father's parental rights to the minor child should be terminated pursuant to 23 Pa.C.S. §2511(a)(1), (2) and (5) of the Adoption Act. The Agency has the burden of establishing by clear and convincing evidence that statutory grounds exist to justify the involuntary termination of parental rights. In re Child M., 681

8

A.2d 793, 797 (Pa. Super. 1996). The clear and convincing standard means that the evidence presented by the Agency is so "clear, direct, weighty, and convincing" that one can "come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Matter of Sylvester, 555 A.2d 1202, 1202-1204 (Pa. 1989). The Agency must also present evidence proving that the termination of parental rights will serve the child's best interests. In the Matter of Adoption of Charles E.D.M. II, 708 A.2d 88, 92-93 (Pa. 1998). To determine whether termination is within the best interest of the child, the court must examine the possible effect the termination would have on the child's needs and general welfare. In re Adoption of Godzak, 719 A.2d 365, 368 (1998).

## THE AGENCY HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS TO THE MINOR CHILD MUST BE TERMINATED PURSUANT TO 23 Pa.C.S. §2511(a)(1)

To terminate parental rights under 23 Pa.C.S. §2511(a)(1) of the Adoption Act, the Agency must establish, by clear and convincing evidence, that the parent has either demonstrated a settled purpose of relinquishing parental claim to a child or has failed to perform parental duties. In the Matter of Adoption of Charles E.D.M. III, 708 A.2d 88 (Pa. 1998). Once one of the two factors has been proven, the Court must examine the following three factors:

1. Parent's explanation for the conduct;

2. Post-abandonment contact between parent and child; and

3. Effect of termination on child. *Id.*

9

The Agency has proven by clear and convincing evidence that Mother and Father have failed to perform any significant parental duties for the child. Testimony established that Mother and Father have provided the minor child with event-based gifts and have attended some of the minor child's medical appointments. Mother and Father are not currently involved with minor child's therapy and services to address her extensive special needs. Mother and Father have been unable to obtain stable employment and they rely on paternal grandmother for food and housing. After approximately one (1) year of services, Mother and Father are still unable to meet the minor child's most basic needs. The Court finds that the termination of Mother's and Father's parental rights will provide a benefit to the minor child in that the child will achieve stability and permanency in a loving and safe home.

Therefore, for all the reasons stated above, the Agency has proven by clear and convincing evidence that termination of parental rights to the minor child is justified pursuant to Section 2511(a)(1) of the Adoption Act.

### THE AGENCY HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS TO THE MINOR CHILD MUST BE TERMINATED PURSUANT TO 23 Pa.C.S. §2511(a)(2) and (5)

The Agency has also proven by clear and convincing evidence that the parental rights to minor child should be terminated pursuant to 23 Pa.C.S. §2511(a)(2) and (5) of the Adoption Act. The mandates of these sections are as follows:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence

10

necessary for his physical or mental wellbeing and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

The Court finds that the conditions which led the child to placement outside the care and custody of Mother and Father continue to exist. The child has been in placement for approximately twelve (12) months which is most of the minor child's life. Minor child is well-bonded to the foster family. Testimony established that Mother and Father have failed to alleviate the conditions which led to the child's placement. Mother and Father still struggle with feeding the minor child to ensure that her nutritional needs are being met. Mother and Father are unable to adopt and implement parenting skills which will allow them to develop a close bond with the minor child. Mother and Father have failed to obtain stable employment and are unable to financially provide for themselves or the minor child.

In consideration of this testimony, the Court finds that the Agency clearly and convincingly established that termination of parental rights is justified pursuant to Sections 2511(a)(2), and (5) of the Adoption Act.

11

## IN CONSIDERATION OF §2511(b), TERMINATION OF PARENTAL RIGHTS WOULD BEST SERVE THE NEEDS AND WELFARE OF THE MINOR CHILD

Having established the statutory grounds for the involuntary termination of the parental rights of Father, the Court's final consideration is whether termination of parental rights will best serve the developmental, physical and emotional needs and welfare of the child. 23 Pa.C.S. §2511(b).

> [T]he Court must carefully consider the tangible dimension, as well as the intangible dimension – the love, comfort, security, and closeness – entailed in a parent-child relationship. (citations omitted). The court must consider whether a bond exists between the child and [parent], and whether termination would destroy an existing beneficial relationship. In re: B.N.M., 856 A.2d 847 (Pa. Super. 2004).

The Court has thoroughly evaluated the minor child's relationships in this matter. The Court finds that the child has an acquaintance bond with Mother and Father. At this point, the Court believes that the minor child will not be negatively impacted by the termination of Mother's and Father's parental rights. The Court also finds that the bond between the minor child and the foster parents is strong and healthy. Testimony established that the child is happy and feels comfortable in their care. Minor child spontaneously reaches out to the foster parents who provide her daily needs and act as the child's parental figures. The bond that the minor child has with the foster family can provide safety, security and permanency for the child. Termination of parental rights will best meet the needs of the child and permit the child to achieve the stability that she deserves.

12

## CONCLUSIONS OF LAW

1. The current placement of H.A.C. continues to be necessary and appropriate. 42 Pa.C.S. §6351(f)(1).

2. Mother and Father have not been able to meet the goals set forth in the family service plans. 42 Pa.C.S. §6351(f)(2).

3. The circumstances which necessitated the child's original placement have not been alleviated. 42 Pa.C.S. §6351(f)(3).

4. The current goal for the child of reunification with a parent is no longer feasible and appropriate because Mother and Father have failed to meet the irreducible minimum requirements necessary to parent the child. 42 Pa.C.S. §6351(f)(4).

5. The minor child's best interests demand that the current goal of reunification with a parent be changed to placement for adoption.

6. Mother and Father have failed to perform parental duties for a period well in excess of six (6) months. 23 Pa.C.S. §2511(a)(1).

7. The Agency has established by clear and convincing evidence that the inability and refusal of Mother and Father has caused the child to be without parental care, control or subsistence necessary for her physical or mental well-being and the conditions cannot be remedied by Mother and Father. 23 Pa.C.S. §2511(a)(2).

13

## SUMMARY

In conclusion, the Court believes that the termination of Mother's and Father's parental rights is clearly in the best interests of the minor child to promote her welfare and allow her to achieve permanency. The Court is therefore executing a Decree terminating Mother's and Father's parental rights with respect to H.A.C. and an Order directing that the current goal of reunification with parent or guardian for H.A.C. is changed to placement for adoption. Said Order also establishes the concurrent goal for H.A.C. to be placement with a legal custodian (non-relative).

Dated: October 5, 2015                  **BY THE COURT,**

                                           *Todd R. Platts*

                                    **TODD R. PLATTS, JUDGE**